## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

BARBARA ANN KELLY, *et al.*,        :
                                    :
    Plaintiffs                  :
                                    :
v.                                  :   Case No. 3:11cv252-MCR/EMT
                                    :
REGIONS BANK,                       :
                                    :
    Defendant                   :

### SECOND AMENDED COMPLAINT

Pursuant to Fed.R.Civ.P. 15(a)(1)(b), plaintiffs Barbara Ann Kelly ("Kelly") and Gregory Brian Myers ("Myers") (Kelly and Myers are collectively referred to herein as "Plaintiffs"), by and through their undersigned attorneys, Christopher C. Fogleman, Esquire and Gleason, Flynn, Emig & Fogleman, Chartered,  file this Second Amended Complaint against defendant Regions Bank ("Regions Bank"), and in support thereof  state as follows:

### PARTIES

1.  Plaintiff Kelly is a Maryland resident.

2.  Plaintiff Myers is a Florida resident.

3.  Defendant Regions Bank is an Alabama bank which is registered to do business in the State of Florida as a foreign, for profit corporation.

### JURISDICTION AND VENUE

4.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1332 because this action involves citizens of different states, and is for a sum greater than seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

5.   Venue is proper in this district pursuant to 28 U.S.C. § 1391 because this action involves a predatory loan made in Florida for residential property located in Walton County, Florida, because there is currently pending a foreclosure action on the predatory loan which involves the subject matter of this action, and this is the district in which a substantial part of the events or omissions giving rise to the claims occurred.

## BACKGROUND

6.   Plaintiffs are the owners of residential property known as Lot 6 in Seaside 14 situated within Walton County, Florida ("Lot 6").

7.   Plaintiffs purchased Lot 6 on March 23, 2004 for $900,000.00.

8.   Cynthia Villanova, Vice President, Relationship Manager, Private Banking, Wealth Management, Private Client Group ("Regions VP") acted as financial advisor to Plaintiffs, with a formal fiduciary duty to Plaintiffs, with respect to Plaintiffs' real estate, banking, and investment dealings. Regions VP structured an $810,000.00 purchase money mortgage for Lot 6.

9.   Prior to closing on any loans with Regions Bank, Regions VP represented that she would serve as Plaintiffs' "Relationship Manager" and required Plaintiffs to deposit $50,000.00 into a "Private Client Services" account that Regions VP established and agreed to manage. Inclusive of the initial $50,000.00 deposit, Plaintiffs deposited a total of $405,500.00 into the "Private Client Services" account that Regions VP established and agreed to manage.

10. In March, 2007, Regions VP advised Plaintiffs to refinance Lot 6, doubling the interest rate Plaintiffs were being charged to 7.99%. Internal Regions Bank correspondence

dated March 1, 2007 contains a note from the underwriter, Brian Shoemaker, which states in pertinent part "APPRAISAL IN FILE VALUED AT $950,000 IS ACCEPTABLE." In March 2007, Plaintiff Myers was a Maryland resident and was not familiar with the Florida real estate market; Myers did not move to Florida until April 2010.

11. In April, 2008, Regions VP again advised Plaintiffs to refinance Lot 6. With this refinance, Regions VP advised Plaintiffs to accept a non-standard, cash-out refinance, shortening the balloon term of the loan, increasing the loan balance to $1,068,000, making the payments principal and interest, and requiring the purported equity in Lot 6 be cashed out in the amount of $241,838.90 and delivered to Regions Bank ("Predatory Loan"). A copy of the promissory note is attached hereto and incorporated herein as Exhibit A. In April 2008, Plaintiff Myers was a Maryland resident and was not familiar with the Florida real estate market; Myers did not move to Florida until April 2010.

12. Regions VP stated the cash-out proceeds of $241,838.90 from the Predatory Loan would be placed in Plaintiffs' "trust account" ("Plaintiffs Trust Account") which would be administered by "Regions Trust" ("Regions Trust") and subject to the terms of a Collateral Deposit Escrow Agreement (the "Escrow Agreement"). Exhibit B to the Escrow Agreement states "The Escrow Funds shall be invested in Regions Trust Money Market Deposit Fund (RTMMDF)." However, the "Escrow Funds" were not invested in the Regions Trust Money Market Deposit Fund (RTMMDF), but rather in the Regions Trust Money Market Deposit Account (RTMMDA), a different registered security, without Plaintiffs' prior approval. A copy of the Escrow Agreement is attached hereto and incorporated herein as Exhibit B.

3

13. Regions VP and Regions Bank represented the proceeds in the Plaintiffs Trust Account would be used to pay, among other things, the mortgage payments due on the Predatory Loan and two other existing residential mortgage loans Plaintiffs had with Regions Bank, to pay the real estate taxes, insurance, and HOA assessments for Lot 6 and two other properties securing Regions Bank loans, and used to pay all fees and expenses associated with the administration of the Plaintiffs Trust Account with Regions Trust. The appraisal fee on the Lot 6 Predatory Loan and all other closing costs associated with the Predatory Loan, totaling $15,241.00, were paid by Plaintiffs.

14. The involvement of Regions Trust was a key selling point in the Regions Bank Predatory Loan scheme. By agreeing to associate its name, Regions Trust provided a false air of legitimacy to the Predatory Loan scheme, giving the Plaintiffs the impression that their funds would be administered and disbursed under an independent, formal fiduciary relationship.

15. In order to effect the non-standard, cash-out Predatory Loan, Regions VP advised Plaintiffs that Regions Bank would be responsible for obtaining an appraisal of Lot 6 for Plaintiffs and that the appraisal would be used to justify the materially higher loan amount of the non-standard, cash-out Predatory Loan.

16. Regions VP assured Plaintiffs that the "fair market value" of Lot 6 would be sufficient to support the increase in the Predatory Loan amount.

17. Regions VP assured Plaintiffs that the appraisal would be reviewed "in-house" by Regions Bank underwriters for completeness and accuracy.

18. Regions VP assured Plaintiffs that a second, review appraisal would not be necessary to confirm the completeness and accuracy of the appraisal, notwithstanding such a large increase in the Predatory Loan amount, and notwithstanding such a large cash-out amount associated with the Predatory Loan.

19. Through information and belief, the appraisal was inflated for the purpose of enabling Regions Bank to approve and close the Predatory Loan.

20. Plaintiffs used a title agency selected by Regions Bank.

21. Plaintiffs provided Regions VP and Regions Bank with financial information, including tax returns.

22. Regions VP and Regions Bank based the Predatory Loan on the inflated value of the Lot 6 appraisal, rather than on the financial ability of Plaintiffs to repay the Predatory Loan.

23. With unilateral, absolute, and unfettered control of Plaintiffs Trust Account at Regions Trust, Regions Bank fraudulently and with willful intent, engaged in a pattern of activities that triggered a default in the Predatory Loan and the other two loans Plaintiffs had with Regions Bank. In July 2009, without prior notice to Plaintiffs, Regions Bank instructed Regions Trust to cease making the payments due on all three of Plaintiffs' loans with Regions Bank, notwithstanding there being over $45,000 in Plaintiffs Trust Account. This instruction continued in August 2009, September 2009, and October 2009.

24. Because no payments were made on the Predatory Loan or the other two loans Plaintiffs had with Regions Bank, Regions Bank declared each of the three loans in default.

25. Regions Bank unlawfully and knowingly reported the untrue defaults to each of the major credit reporting agencies, thereby making false and untrue statements about Plaintiffs

to the major credit reporting agencies, and by way thereof, to countless number of third parties.

26. As a result of such untrue credit disclosures, the Plaintiffs' credit ratings and financial standings were destroyed.

27. Internal Regions Bank e-mail correspondence dated March 29, 2010 confirms that prior to that date Regions Bank had not "corrected the delinquency reporting for the months of August – November" and the Regions Mortgage account "is reporting delinquent for those months," and on that date Regions Bank requested that "all 3 accounts be reported as current for those months."

28. Plaintiffs' inability to obtain alternative financing and/or refinancing has triggered defaults and foreclosure actions on virtually all of Plaintiffs' real estate loans, including those with Regions Bank.

29. Plaintiffs' credit cards have been cancelled due to the untrue credit disclosures.

30. As a result of such untrue credit disclosures, Plaintiffs are on the verge of bankruptcy and Plaintiffs are estopped from pursuing alternative financing and/or refinancing to remedy the Regions Bank loan situations, as well as their other real estate, banking, and investment dealings, because their credit and financial standing has been ruined by Regions Bank.

31. Regions Bank filed a foreclosure action against Plaintiffs on Lot 6, and the foreclosure action involving Lot 6 is currently pending in the Circuit Court in Walton County, Florida, Case No. 10 CA 00162.

32. The Regions Bank foreclosure action contained a notice required by the Fair Debt Collection Practices Act. Plaintiffs, within 30 days, of being served with the foreclosure

action on Lot 6, disputed the validity of the referenced debt and requested proof of the debt. Plaintiffs advised Regions Bank and its legal counsel that while the referenced debt is being disputed, neither Regions Bank nor its legal counsel can report the referenced debt to the credit reporting agencies. Kelly and Myers in each of their respective dispute letters, instructed Regions Bank and its legal counsel to "contact the credit reporting agencies, inform them that the debt is disputed, and ask them to delete it from my credit report." Neither Regions Bank nor its legal counsel responded to Plaintiffs' dispute letters and failed to provide the requested documents. Copies of Plaintiffs' Letters are attached hereto and incorporated herein as Exhibits C1 and C2.

33. Regions Bank's continued unrelenting and harassing collection efforts have had a devastating impact on the emotional and physical well-being of Plaintiffs. Plaintiffs have suffered severe emotional distress, and pain and suffering due to Regions Bank's willful, intentional and negligent infliction of harm.

34. Regions Bank's untrue credit and collection disclosures have had a devastating effect on the Plaintiffs' professional reputation and standing, and professional prospects. Plaintiffs' professional reputation and standing, and professional prospects, are greatly affected by their credit worthiness. Plaintiff Myers was licensed by the Financial Industry Regulatory Authority as an investment professional, but, as a consequence of Regions Bank's unlawful actions, including untrue credit and collection disclosures, Plaintiff Myers was ethically and contractually obligated to resign his position at Convergent Wealth Advisors, LLC in October 2009.

35. Plaintiffs retained the legal services of the law firm of Crew & Crew, P.A. initially and Gleason, Flynn, Emig & Fogleman, Chartered subsequently to represent them in this matter. Plaintiffs are obligated to pay a reasonable fee to their attorneys for this case.

36. Plaintiffs performed all conditions precedent to bringing this action or such conditions have occurred.

## COUNT I
## BREACH OF CONTRACT

37. Plaintiffs reallege paragraphs 1 – 36.

38. Regions Bank and Plaintiffs entered into an Escrow Agreement whereby Regions Bank agreed to ensure that Plaintiffs' loan payments and other payments were timely made.

39. Regions Bank breached the Escrow Agreement by failing to ensure that the payments on Plaintiffs' loans were timely made.

40. As a result of this breach, Plaintiffs suffered damages.

41. Plaintiffs are entitled to recover their attorney fees and costs pursuant to the promissory note and the Escrow Agreement.

WHEREFORE, Plaintiffs request judgment against Regions Bank and for their damages, attorneys fees and costs, and for such other relief as the court deems just.

## COUNT II
## VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT

42. Plaintiffs reallege paragraphs 1 – 41.

43. In March 2004, Plaintiffs purchased Lot 6 upon which they intended to build a second home for their family.

44. Plaintiffs obtained a loan from Regions Bank to finance the purchase of Lot 6.

45. At the time Plaintiffs applied for and obtained the loan for the purchase of Lot 6, Plaintiffs informed Regions VP, who was advising Plaintiffs with respect to the financing for the purchase of Lot 6, that Plaintiffs' purchase of Lot 6 was for the purpose of building thereon a second home for their family.

46. At all times relevant, Regions VP knew and understood that the Plaintiffs' purchase of Lot 6 was for the purpose of building thereon a second home for their family.

47. In March, 2007, Regions VP advised Plaintiffs to refinance Lot 6.

48. In April 2008, Regions VP again advised Plaintiffs to refinance Lot 6. With this refinance, Regions VP advised Plaintiffs to accept a non-standard, cash-out refinance, shortening the balloon term of the loan, increasing the loan balance to $1,068,000, making the payments principal and interest, and requiring the purported equity in Lot 6 to be cashed-out in the amount of $241,838.90 and delivered to Regions Bank.

49. The Disbursement Request and Authorization prepared by Regions Bank and contained in the loan package for the May 2008 refinance expressly stated Plaintiffs' representation that "The primary purpose of this loan is for:  Personal, Family or Household Purposes or Personal Investment" and not for "Business." Regions Bank's internal loan processing and underwriting system ("ACAPS") contains an April 28, 2008 entry which states, in pertinent part, "USE? SECONDARY RESIDENCE." A copy of the Disbursement Request and Authorization is attached hereto and incorporated herein as Exhibit D.

50. Because the primary purpose of the loan in each instance, as confirmed by the loan documents – specifically, the purchase of Lot 6 in March, 2004, the refinance of Lot 6 in March, 2007, and the refinance of Lot 6 in May, 2008 – was to finance Lot 6, a property

owned and used by Plaintiffs' for the intended purpose of building thereon a second home for their family, the loan constitutes a consumer debt under Florida's Consumer Collection Practices Act ("FCCPA"). *See* Fla. Stat. Ann. § 559.55(1) (West 2012).

51. Since Plaintiffs are natural persons obligated or allegedly obligated to pay the Predatory Loan at issue in this case, the Plaintiffs are debtors and / or consumers under the FCCPA. *See* Fla. Stat. Ann. § 559.55(2) (West 2012).

52. Regions Bank had complete and sole control over the Plaintiffs Trust Account. Under the terms of the Escrow Agreement, Plaintiffs' loan payments on the Predatory Loan and the two other loans Plaintiffs had with Regions Bank were to be paid from the proceeds in the Plaintiffs Trust Account.

53. Under the terms of the Escrow Agreement, Regions Bank agreed to ensure that Plaintiffs' loan payments due on the Predatory Loan and the two other loans Plaintiffs had with Regions Bank were timely made.

54. Beginning in July 2009, despite the fact that there were sufficient funds in Plaintiffs Trust Account to make all loan payments on the Predatory Loan and the two other loans Plaintiffs had with Regions Bank, Regions Bank, acting intentionally and maliciously and without legal cause or justification, stopped making the monthly payments it had been contractually obligated to make pursuant to the terms of the Escrow Agreement.

55. Upon learning that Regions Bank had breached its contractual duty to make the required disbursements pursuant to the terms of the Escrow Agreement, Plaintiffs contacted Regions VP, protested Regions Bank's actions and stated that Regions Bank had no right to

stop making payments, and notified Regions Bank that its unlawful conduct was ruining Plaintiffs' credit.

56. Regions Bank persisted in its unjustified refusal to make the contractually required disbursements pursuant to the terms of the Escrow Agreement throughout July, August, September and October, 2009, despite the fact that there were sufficient proceeds in Plaintiffs Trust Account to make each and every required payment.

57. Upon information and belief, for each month from July 2009 through October 2009, Regions Bank reported to the credit reporting agencies that the Plaintiffs were in default on all of their loans with Regions Bank.

58. Because Regions Bank knew there were sufficient proceeds in the Plaintiffs Trust Account to make each and every required payment, on the Predatory Loan and the two other loans Plaintiffs had with Regions Bank, and because Regions Bank was in complete and sole control of the Plaintiffs Trust Account and was required to make all loan payments pursuant to the terms of the Escrow Agreement, Regions Bank knew its claim that Plaintiffs were in default was false.

59. Since Regions Bank falsely reported to the credit reporting agencies that the Plaintiffs were in default, and knew or should have known that the information it reported was false, Regions Bank violated the FCCPA which specifically prohibits any person collecting a consumer debt from disclosing to a person, other than the debtor or her or his family, information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the information is false. *See* Fla. Stat. Ann. § 559.72(5) (West 2012).

60. Moreover, starting in July 2009, Plaintiffs disputed that they were in default on the Predatory Loan and the two other loans Plaintiffs had with Regions Bank, and Regions Bank knew or should have known that the Plaintiffs disputed the claim that they were in default.

61. Even though Regions Bank knew or should have known that the Plaintiffs reasonably disputed the claim that they were in default on the Predatory Loan and the two other loans Plaintiffs had with Regions Bank, Regions Bank failed to disclose to the credit reporting agencies that Plaintiffs disputed they were in default when Regions Bank reported the defaults to the credit reporting agencies.

62. Since Regions Bank failed to disclose to the credit reporting agencies that Plaintiffs reasonably disputed Regions Bank's claims of default on the Predatory Loan and the two other loans Plaintiffs had with Regions Bank, Regions Bank violated the FCCPA which specifically prohibits any person collecting a consumer debt from disclosing information concerning the existence of a debt, known to be reasonably disputed by the debtor, without disclosing that fact. *See* Fla. Stat. Ann. § 559.72(6) (West 2012).

63. On October 30, 2009, Regions Bank sent Plaintiffs a notice that they were in breach of the Predatory Loan ("Notice of Breach") demanding that Plaintiffs cure the breach or Regions Bank would take legal action to recover the Predatory Loan, including but not limited to foreclosing on Lot 6. A copy of the Notice of Breach is attached hereto and incorporated herein as Exhibit E.

64. Because there were sufficient proceeds in the Plaintiffs Trust Account to pay all of Plaintiffs' loans, and because Regions Bank had complete and sole control over the Plaintiffs Trust Account and could, therefore, pay all of Plaintiffs' loans, Regions Bank knew or should

have known that the Predatory Loan debt alleged in the Notice of Breach was not a legitimate debt, and knew or should have know that it had no right to seek any legal action against the Plaintiffs, including without limitation foreclosing on Lot 6.

65. Since the Notice of Breach claimed or threatened to enforce a debt Regions Bank knew was not legitimate, and since the Notice of Breach asserted the existence of legal rights Regions Bank knew it had no right to enforce or seek, Regions Bank violated the FCCPA which specifically prohibits any person collecting a consumer debt from claiming, attempting, or threatening enforcement of a debt when such person knows that the debt is not legitimate, or asserting the existence of some other legal right when such person knows that the right does not exist. *See* Fla. Stat. Ann. § 559.72(9) (West 2012).

66. Beginning in July 2009, Plaintiffs vigorously and repeatedly denied that they were in default and demanded that Regions Bank use the proceeds in the Plaintiffs Trust Account to pay all of Plaintiffs loans, including the Predatory Loan and the two other loans Plaintiffs had with Regions Bank.

67. Regions Bank intentionally and willfully and without legal cause or justification refused to pay the payments on the Predatory Loan and the two other loans Plaintiffs had with Regions Bank.

68. Instead Regions Bank intentionally and willfully engaged in a pattern of activity with Plaintiffs through letters, emails and telephone conversations, including the delivery of the Notice of Breach, which abused and harassed the Plaintiffs by, among other things, falsely stating that Plaintiffs were in default and demanding Plaintiffs make payments over and

above those required by the Predatory Loan and the two other loans Plaintiffs had with Regions Bank.

69. By conducting such abusive and harassing actions against Plaintiffs, Regions Bank violated the FCCPA which specifically prohibits any person collecting a consumer debt from willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family. *See* Fla. Stat. Ann. § 559.72(9) (West 2012).

70. As a result of Regions Bank's failure to properly service the Predatory Loan and the two other loans Plaintiffs had with Regions Bank, and pursuing unlawful collection actions against Plaintiffs in violation of the FCCPA, Plaintiffs have been damaged and Plaintiffs seek to recover their actual or statutory damages from Regions Bank under the FCCPA. *See* Fla. Stat. Ann. § 559.77(2) (West 2012).

71. As a result of Regions Bank's failure to properly service the Predatory Loan and the two other loans Plaintiffs had with Regions Bank, and pursuing unlawful collections actions in violation of the FCCPA, Plaintiffs have been damaged and have had to retain counsel to bring this action on their behalf.

72. Plaintiffs are entitled to recover their attorneys' fees and costs from Regions Bank pursuant to the FCCPA. *See* Fla. Stat. Ann. § 559.77(2) (West 2012).

73. Because Regions Bank's actions in willfully and intentionally refusing to pay the payments due on the Predatory Loan and the two other loans Plaintiffs had with Regions Bank with the proceeds in the Plaintiffs Trust Account were done with actual malice to cause

Plaintiffs to prematurely default on the Predatory Loan and the two other loans Plaintiffs had with Regions Bank, thereby enabling Regions Bank to accelerate the Predatory Loan amount, charge Plaintiffs extra fees and costs, and seize Plaintiffs' property, Plaintiffs are entitled to punitive damages against Regions Bank under the FCCPA. *See* Fla. Stat. Ann. § 559.77(2) (West 2012).

WHEREFORE, Plaintiffs request judgment against Regions Bank and for their damages, attorneys fees and costs, and for punitive damages, and for such other relief as the court deems just.

## COUNT III
## FRAUDULENT INDUCEMENT

74. Plaintiffs reallege paragraphs 1 - 73.

75. Regions Bank obtained an appraisal of Lot 6 and used such appraisal to induce Plaintiffs to enter into the Predatory Loan.

76. The appraisal was fraudulent as it artificially inflated the value of the collateral, and such inflated appraisal was intended to induce Plaintiffs to enter into the Predatory Loan.

77. Plaintiffs reasonably relied on Regions Bank's representations that there was sufficient value in the collateral to support the Predatory Loan and that the appraisal was accurate.

78. Regions Bank made other false statements of material fact related to the Predatory Loan.

79. Regions Bank knew that the statements were false or made the statements without knowledge of the statements' truth or falsity.

80. Regions Bank intended for the false statements to induce Plaintiffs to enter into the Predatory Loan.

81. As a consequence of Plaintiffs' reliance on Regions Bank's false statements of material fact, Plaintiffs suffered damages.

WHEREFORE, Plaintiffs request judgment against Regions Bank and for their damages, attorneys fees and costs, and for such other relief as the court deems just.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

82. Plaintiffs reallege paragraphs 1 - 81.

83. As their financial and investment advisor, prior to and after establishing a debtor-creditor relationship, Regions Bank established a relationship of trust and confidence with Plaintiffs and owed Plaintiffs a fiduciary duty to, among other things, act in good faith and in the best interest of Plaintiffs.

84. Regions Bank knew that the Predatory Loan would likely benefit Regions Bank at Plaintiffs' expense.

85. Regions Bank failed to disclose facts material to the transaction, refused and/or neglected to carry out the terms of the transaction and therefore breached its fiduciary duties owed to Plaintiffs in connection with the administration and servicing of the Predatory Loan and Plaintiffs' two other loans with Regions Bank.

86. As a result of Regions Bank's breach of its fiduciary duty, Plaintiffs have sustained monetary damages which include having to defend a foreclosure, being charged illegal and predatory servicing charges, court costs and related fees and attorney's fees, and having their credit slandered and negatively affected.

16

WHEREFORE, Plaintiffs request judgment against Regions Bank and for their damages, attorneys fees and costs, and for such other relief as the court deems just.

## COUNT V
## CONSTRUCTIVE FRAUD; FRAUDULENT MISREPRESENTATION

87. Plaintiffs reallege paragraphs 1 - 86.

88. Regions Bank had a duty to act prudently, given its fiduciary and contractual relationship with Plaintiffs.

89. In March 2007, Plaintiff Myers was a Maryland resident and was not familiar with the Florida real estate market; Myers did not move to Florida until April 2010.

90. Regions Bank was in a superior position to know that in 2008, the real estate values in south Walton County entered into a severe decline, and the value of Plaintiffs' Lot 6 in 2008 was less than its value in prior years.

91. Notwithstanding Regions Bank's superior knowledge, Regions Bank, in its own capacity and in concert with its real estate appraiser, artificially inflated the value of Plaintiffs' Lot 6 for the sole purpose to induce Plaintiffs to enter into the Predatory Loan with the principal balance almost 25% higher than the prior loan on Lot 6.

92. Regions Bank misrepresented to Plaintiffs a material fact for the purposes of inducing Plaintiffs to refinance the existing loan on Lot 6 and to obtain cash out proceeds from the transaction for Regions Bank.

93. Regions Bank knew or should have known the value of Plaintiffs' Lot 6 was insufficient to collateralize the Predatory Loan, and failed to disclose this to Plaintiffs.

94. Regions Bank knew or should have known the Plaintiffs were financially incapable of affording the Predatory Loan and Plaintiffs were financially incapable of affording the balloon payment due on the Predatory Loan.

95. Regions Bank represented that it was under a contractual and fiduciary duty to use all of Plaintiffs Trust Account monies to pay, among other things, the mortgage payments due on the Predatory Loan and two other existing mortgage loans Plaintiffs had with Regions Bank, to pay the real estate taxes, insurance, and HOA assessments for Lot 6 and two other properties securing Regions Bank loans.

96. Regions Bank took advantage of the fiduciary relationship it had with the Plaintiffs by inflating the value of Lot 6 to cash out monies for Regions Bank, thereby stripping out all of the Plaintiffs' equity from Lot 6, subjecting Plaintiffs to personal liability for the unsecured portion of the Predatory Loan, and leaving Plaintiffs unable to afford the balloon payment due on the Predatory Loan.

97. Regions Bank took advantage of the fiduciary and contractual relationship it established by the Escrow Agreement by allowing its authorized agent(s) to knowingly and intentionally stop paying the Predatory Loan and Plaintiffs' two other loans with Regions Bank when there were sufficient proceeds in Plaintiffs Trust Account to make such payments.

98. Regions Bank further took advantage of the fiduciary and contractual relationship by willfully and knowingly declaring a default in the Predatory Loan and Plaintiffs' two other loans with Regions Bank and thereupon reporting such defaults to the major credit reporting agencies.

18

99. Plaintiffs relied on the financial and lending advice given by Regions Bank in deciding to enter into the Predatory Loan.

100. As a consequence of Plaintiffs' reliance on Regions Bank's representations, Plaintiffs suffered injury and damages.

WHEREFORE, Plaintiffs request judgment against Regions Bank and for their damages, attorneys fees and costs, and for such other relief as the court deems just.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

101. Plaintiffs reallege paragraphs 1 - 36; 83 - 86.

102. Regions Bank owed the Plaintiffs a duty of care in advising Plaintiffs to refinance their pre-existing loan on Lot 6.

103. In March 2007, Plaintiff Myers was a Maryland resident and was not familiar with the Florida real estate market; Myers did not move to Florida until April 2010.

104. Regions Bank was in a superior position to know that in 2008, the real estate values in south Walton County entered into a severe decline, and the value of Plaintiffs' property in 2008 was less than its value in prior years.

105. Notwithstanding Regions Bank's superior knowledge, Regions Bank, in its own capacity and in concert with its real estate appraiser, negligently inflated the value of Plaintiffs' property for the sole purpose to induce Plaintiffs to enter into the Predatory Loan with the principal balance almost 25% higher than the prior loan.

106. Regions Banks' negligent misrepresentation of the value of Lot 6 to Plaintiffs was a material inducement to the Plaintiffs' decision to enter into the Predatory Loan.

107.  Regions Bank knew or should have known the value of Plaintiffs' property was insufficient to collateralize the Predatory Loan.

108.  Regions Bank knew or should have known the Plaintiffs were financially incapable of affording the Predatory Loan and the Plaintiffs were financially incapable of affording the balloon payment due on the Predatory Loan.

109.  Regions Bank negligently represented to Plaintiffs that all of the cashed out proceeds would be placed in Plaintiffs' Trust Account at Regions Trust and would be used for the payment of amounts due on the Predatory Loan and for Plaintiffs' two other loans with Regions Bank.

110.  Regions Bank knew or should have known that by refinancing the pre-existing loan on Lot 6, it was thereby stripping out all of the Plaintiffs' equity from Lot 6 leaving Plaintiffs unable to afford the balloon payment due on the Predatory Loan.

111.  The actual value of Lot 6 was significantly less than the amount of Regions Bank's Predatory Loan, all of the equity in Lot 6 has been stripped out, and the Plaintiffs are unable to refinance the Predatory Loan.

112.  Plaintiffs justifiably relied on the financial and lending advice given by Regions Bank to entering into the Predatory Loan transaction.

113.  The Plaintiffs' reliance on Regions Bank's representations caused Plaintiffs to suffer injury and damages.

WHEREFORE, Plaintiffs request judgment against Regions Bank and for their damages, attorneys fees and costs, and for such other relief as the court deems just.

## JURY DEMAND

Trial by jury is demanded on all counts.

Respectfully submitted,

**GLEASON, FLYNN, EMIG & FOGLEMAN, CHARTERED**

*/s/ Christopher C. Fogleman*
Christopher C. Fogleman, Esquire
MD Federal Bar No. 07132
11 North Washington Street, Suite 400
Rockville, Maryland 20850-4278
301.294.2110 (telephone)
301.294.0737 (facsimile)
cfogleman@gleason-law.com (e-mail)
**Counsel for plaintiffs,**
**Barbara Ann Kelly and Gregory Brian Myers**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Second Amended Complaint was served this 20th day of August, 2012, by Notice of Electronic Filing to:

Peter P. Hargitai, Esquire (peter.hargitai@hklaw.com)
Frank Edward Morreale, Esquire (frank.morreale@khlaw.com)
Holland & Knight LLP
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
**Counsel for defendant, Regions Bank**

Kevin Willoughby Cox, Esquire (kevin.cox@hklaw.com)
Holland & Knight LLP
PO Drawer 810
Tallahassee, Florida 32302-0810
**Counsel for defendant, Regions Bank**

*/s/ Christopher C. Fogleman*
Christopher C. Fogleman